IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VICTORIA DAVIDHEISER,

          Plaintiff,

   v.

NANCY A. BERRYHILL
Acting Commissioner of the Social Security
Administration,

          Defendant.

CIVIL ACTION
NO. 17-5097

FILED
NOV 06 2018
KATE ........N, Clerk
By.......... Dep. Clerk

**OPINION**

**Slomsky, J.**

November 6, 2018

### I.    INTRODUCTION

      Before the Court are the Objections of Plaintiff Victoria Davidheiser to the Report and

Recommendation ("R&R") of United States Magistrate Judge Carol Sandra Moore Wells. (Doc.

No. 16.)  On November 13, 2017, Plaintiff initiated this action by filing a Motion for Leave to

Proceed in Forma Pauperis. (Doc. No. 1.)  On November 15, 2017, Plaintiff filed a Complaint

against Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security

Administration, alleging that Defendant wrongfully denied her disability benefits ("DIB") under

Title II of the Social Security Act. (Doc. No. 3)  On May 29, 2018, the Court referred the case to

Magistrate Judge Wells for an R&R. (Doc. No. 14.)  On July 31, 2018, Magistrate Judge Wells

issued the R&R, recommending that Plaintiff's request for review be denied (Doc. No. 15), and

on August 14, 2018, Plaintiff filed timely Objections. (Doc. No. 16.)  Finally, on August 27,

2018, Defendant filed a Response to Plaintiff's Objections. (Doc. No. 18.)

      Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the

portions of the R&R to which objections have been made.  After an independent review of the

record and for reasons that follow, the Court will overrule Plaintiff's Objections and adopt the R&R in its entirety.

## II.   BACKGROUND

### A. Factual and Procedural Background

Plaintiff Victoria Davidheiser was born on February 12, 1989, and was 23-years old on the date her alleged disability began. (Administrative Record ("R.") at 12, 42.) She completed eleventh grade, but never obtained her high school diploma or a GED. (R. at 43.) At the time of her DIB hearing, Plaintiff had four children. While she did not have custody of her children, she visited them once a week. (R. at 43.) Plaintiff previously worked as a housekeeper for at least three different cleaning service companies. (R. at 46-47, 65.) But she claims she lost these jobs because she was unable to get along with coworkers and because she suffered from back pain. (R. at 46-47.)

On October 15, 2013, Plaintiff filed an application for DIB, claiming physical and mental health problems that included borderline personality disorder, anxiety disorder, bipolar disorder, lumber spine strain, and urinary incontinence. (R. at 14.) Her claim was denied on January 22, 2014, and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 11.)   On February 9, 2016, ALJ Donald M. Graffius held a video hearing and heard testimony from Plaintiff, who was represented by counsel. (R. at 12.) The ALJ also heard testimony from Brian Bierley, an impartial vocational expert (R. at 12), and received written testimony from Floyd Scholten, Plaintiff's ex-husband. (R. at 202-12.)

At the hearing, Plaintiff testified about her various impairments. According to her testimony, her mental impairments include difficulty focusing, difficulty getting along with others, trouble sleeping, and major episodes of depression. (R. at 44, 49, 53, 55-56, 59, 63-65,

2

67.) For these conditions, Plaintiff reported that she sees a psychiatrist, a therapist, and a domestic abuse counselor. (R. at 49.)

Plaintiff also testified about various physical impairments, including back pain and severe migraines. (R. at 47, 53-54, 69-70.) She also reported that she has urinary incontinence, but noted that she does not use medication or protective clothing to treat the issue. (R. at 52-54.) She also testified that her symptoms worsened after she was hit by a car in March 2014. (R. at 48.) At the time of the hearing, she was taking at least eight different prescription medications for her physical and mental problems. (R. at 50-52.)

Additionally, Plaintiff testified about her work history, activities, and functionality. In particular, she testified that she cannot concentrate long enough to watch an hour-long television program or read a book. (R. at 44, 48.) While she is able to complete household chores such as cleaning and cooking, she reported that she occasionally burns food because she forgets about it. (R. at 53, 57.) She can drive about three hours a day, but requires breaks. (R. at 58.) At one point, she attempted to crochet blankets, but failed to complete any of them. (R. at 59.) Further, Plaintiff testified that she does not have issues with personal care such as bathing and dressing so long as she takes medication. (R. at 55-56.) She also reported that she is able to shop for groceries, use public transportation, and visit her sister. (R. at 57-58.) With regard to her previous cleaning jobs, Plaintiff testified that she spent roughly half the day standing or walking and the other half of the day driving or cleaning. (R. at 46-47.)

Next, the ALJ heard from the vocational expert and posed to him a hypothetical question. The ALJ asked him what type of jobs an individual with Plaintiff's limited abilities could perform. The vocational expert responded with several jobs, including a housekeeper, a machine feeder, a line operator, and a conveyor line worker. (R. at 71-72.)

3

Finally, the ALJ considered the written testimony of Floyd Scholten. (R. at 205.) In his testimony, Scholten repeated much of what Plaintiff had already reported regarding her anxiety, depression, difficulty focusing, and trouble getting along with others. Additionally, he wrote that before Plaintiff lost custody of their children, she was able to care for the children and their dog. (R. at 205-212.)

On June 2, 2016, the ALJ issued a decision, finding that Plaintiff is not disabled as defined by the Social Security Act. (R. at 9.) After the ALJ's decision, Plaintiff appealed his findings. On September 20, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. (R. at 1.)

## B. Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If she does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, she is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

4

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

Id. § 404.1520(a)(4)(i)–(v).

At the third step, the Social Security Administration determines whether the claimant's medical impairment meets or equals one of the Listings in Appendix 1 of 20 C.F.R. Part 404, Subpart P. § 404.1520(a)(4)(iii). Listing 12.04 pertains to depressive, bipolar and related disorders. 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00A (2015). Each listing contains a statement describing the disorders and certain criteria that must be met in order for the Administration to find that the claimant is disabled. Id.

Paragraph A lists criteria that are necessary to medically substantiate the presence of an impairment. These include medical symptoms, signs, and laboratory results. Id. Paragraph B lists criteria that are necessary to determine whether impairment-related limitations impact the claimant's ability to perform gainful activity. Id. At the time of the ALJ's decision in this case, the claimant's mental impairment needed to satisfy at least two of the following Paragraph B criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining

5

social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one (1) year, or an average of once every four months. Id.

Between the third and fourth steps of the evaluation process, the Social Security Administration assesses a claimant's residual functional capacity ("RFC"), which is the "the most [a claimant] can do despite [her] limitations." § 404.1545(a)(1). The Administration uses the RFC assessment to determine at the fourth step whether the claimant is able to do her "past relevant work." § 404.1545(a)(5)(i)

When determining RFC, the Administration considers "all the relevant evidence in your case record . . . including [a claimant's] medically determinable impairments that are not 'sever.'" § 404.1545(a)(1-2). According to the regulations, the Administration "will consider whether your statements and the statements from third parties are consistent with the medical and other evidence we have." 20 C.F.R. Part 404, Subpart P, App. 1 § 12(C)(3).

## C. The ALJ's Findings

In a decision issued on June 2, 2016, the ALJ applied the Social Security Administration's five-step evaluation and determined that Plaintiff was not disabled as defined by the Act. (R. at 8.) The ALJ made the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2017.

2. [Plaintiff] has not engaged in substantial gainful activity since June 30, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: personality disorder (borderline), not otherwise specified, mood disorder not otherwise specified,

6

anxiety disorder, not otherwise specified, bipolar I disorder, mixed, severe, panic attacks with agoraphobia, attention-deficit hyperactivity, major depressive disorder, moderate, migraine, not intractable, status post cervical spine, thoracic spine, and lumbar spine strain/sprain with lumbar spine radiculitis, urinary incontinence, and asthma (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; and no frequent exposure to fumes, odors, dusts, gases, environments with poor ventilation, hot and cold temperatures, dampness, and humidity. [Plaintiff] is limited to occupations that do not require exposure to dangerous machinery or unprotected heights due to falls. [Plaintiff] is also limited to occupations that allow brief unscheduled access to a restroom during the workday. [Plaintiff] is further restricted to simple routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes with a Specific Vocational Preparation (SVP) of 1 or 2. [Plaintiff] must also work primarily with objects rather than people with no jobs requiring teamwork or interaction with the public.

6. [Plaintiff] has no past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on February 12, 1989 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563).

8. [Plaintiff] has limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue because [Plaintiff] does not have past relevant work (20 CFR 404.1568).

10. Considering [Plaintiff]'s age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404,1569 and 404.1569(a).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 30, 2012, through the date of this decision (20 CFR 404.1520(g)).

(R. at 14-24). Further, despite Plaintiff's testimony to contrary, the ALJ wrote that "[Plaintiff] indicated that she ... watches television, and does arts and crafts projects including crocheting." (R. at 16.)

## III. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner of Social Security, a court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla ... [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 Fed.Appx. 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as her findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1). An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003). Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as her finding of fact. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

## IV. ANALYSIS

Plaintiff makes two Objections to the Magistrate Judge's Report and Recommendation. (Doc. No. 16.) First, Plaintiff contends that the Magistrate Judge erred in finding substantial

8

evidence supports the ALJ's determination that Plaintiff does not meet or medically equal the criteria for a listed impairment. (Id. at 1.) Second, Plaintiff argues that the Magistrate Judge erred in finding that substantial evidence supports the ALJ's determination that her testimony and the testimony of her then-husband were not credible. (Id. at 4.) The Court will address each Objection in turn.

## A. The Magistrate Judge Correctly Found that Substantial Evidence Supports the ALJ's Determination that Plaintiff does not Meet or Medically Equal a Listed Impairment

In her first Objection, Plaintiff argues that the Magistrate Judge impermissibly found that substantial evidence supports the decision of the ALJ that Plaintiff does not meet or medically equal a listed impairment because she does not satisfy the Paragraph B criteria. (Doc. No. 16 at 1.) Specifically, she contends that the ALJ relied on evidence that does not support his findings. (Id.) Plaintiff challenges the following three factual findings regarding Paragraph B criteria: (1) that she does not have marked restriction of activities of daily living; (2) that she does not have marked difficulty maintaining social functioning; and (3) that she does not have marked difficulty maintaining concentration, persistence and pace. (Id.)

### 1. Activities of Daily Living

First, Plaintiff objects to the Magistrate Judge's decision that substantial evidence supports the ALJ's finding that she does not have marked restriction of activities of daily living. (Id.) In particular, she argues that the evidence cited by the ALJ does not support an inference that she only has mild restriction of activities of daily living. (Id. at 1-2.) Instead, she believes the evidence supports a finding that she has marked restriction of activities of daily living. (Id.) The Court is not persuaded.

9

As noted above, at the third step of the five-step evaluation, the Social Security Administration determines whether the claimant's medical impairment meets or equals one of the Listings in Appendix 1 of 20 C.F.R. Part 404, Subpart P. § 404.1520(a)(4)(iii). Each listing contains a statement describing the disorders and criteria that must be met in order for the Administration to find that the claimant is disabled. Id.

Paragraph A lists criteria that are necessary to medically substantiate the presence of an impairment. These include medical symptoms, signs, and laboratory results. Id. Paragraph B lists criteria that are necessary to determine whether impairment-related limitations impact the claimant's ability to perform gainful activity. Id. At the time of the ALJ's decision in this case, the claimant's mental impairment needed to satisfy at least two of the following Paragraph B criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. A marked limitation means more than moderate but less than extreme. Id.

Here, Plaintiff believes that the evidence in the record supports a finding that she has a marked restriction of activities of daily living. (Doc. No. 16 at 1-2.) But as Defendant stressed in her Response, Plaintiff ignores the standard of review applicable here. (Doc. No. 18 at 2.) On review, the Magistrate Judge need only determine whether the ALJ's determination was supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Substantial evidence is "more than a mere scintilla...[and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 Fed. App'x. 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The

Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g)

Here, the ALJ found that Plaintiff only has mild restriction in activities of daily living. In support of this determination, the ALJ wrote the following:

> The plaintiff reported that she prepares meals and performs household chores including cleaning, laundry, and yard work. She reported problems with personal care including dressing, bathing, and caring for her hair, in which she will go days without a shower and weeks without brushing her hair; however, she indicated that she cared for her children including helping them with homework when she had custody. She also reported that she cares for pets. Moreover, mental status examinations show that the claimant appeared clean, neatly groomed, and appropriately dressed.

(R. at 15) (internal citations omitted.)

After examining the ALJ's decision, the Magistrate Judge found that substantial evidence supported the finding that Plaintiff only has mild restriction in activities of daily living. (Doc. No. 15 at 9.) The ALJ properly considered evidence of Plaintiff's ability to cook, clean, and maintain personal grooming, which are all relevant factors in deciding her ability to perform activities of daily living. See 20 C.F.R. Part 404, Subpart P. App. 1 § 12.00(C)(1) (2015). The fact that she performs some of these activities imperfectly does not alter this determination. Further, the remote possibility that the ALJ could have interpreted the facts differently does not mean that his findings lack substantial support. See Guzman v. Colvin, No. 15-841, 2016 WL 3647990, at *2 (D. Del. July 8, 2016.)

Having independently reviewed the record, the Court agrees that substantial evidence supports the finding that Plaintiff only has mild restriction of activities of daily living.

## 2. Maintaining Social Functioning

Second, Plaintiff argues that the Magistrate Judge erred in finding that substantial evidence supports the ALJ's determination that she only had moderate limitation in maintaining

11

social functioning. (Doc. No. 16 at 3.) In particular, she objects to the fact that the Magistrate Judge agreed with the ALJ's determination despite "acknowledge[ing] evidence that could justify a finding of marked impairment in this domain." (Id.) This argument lacks merit.

The Magistrate Judge recognized that "Plaintiff's complaint about the ALJ's finding that she has a moderate limitation in social functioning is stronger [than her other claims], but unpersuasive." (Doc. No. 15 at 10.) But the Magistrate Judge then explained why substantial evidence still supports the ALJ's finding. (Id.) In relevant part, the R&R provides:

> Certainly, Plaintiff's testimony that she could not get along with strangers, that she argued with them, sometimes violently, and that she chose to avoid strangers could justify a finding that she had marked limitations in this area of functioning. See 20 C.F.R. Part 404, Subpart P, App. 1 § 12.00(C)(2) (2015) (noting that marked limitation in social functioning could be found if the claimant was "highly antagonistic, uncooperative or hostile," with shopkeepers). However, the ALJ cited to Plaintiff's ability to grocery shop, use public transportation, visit her sister, attend scheduled appointments and to be cooperative at appointments as the reason to find her only moderately impaired. R. 15. While Plaintiff quarrels with the ALJ's consideration of the extent to which she can perform these functions, see Reply at 5, she can so do so, albeit imperfectly.

(Id.) (emphasis in original)

Here, Plaintiff asserts that the Magistrate Judge's determination that evidence could support a finding that she has marked limitation in maintaining social functioning is enough to overturn the ALJ's determination that she merely had moderate limitation. (Id.) It is not. As above, however, Plaintiff again ignores the applicable standard of review. Just because the Magistrate Judge found that evidence could support a finding that Plaintiff has a marked limitation does not mean that substantial evidence does not exist to support the finding that she only has moderate limitation. See Guzman, 2016 WL 3647990, at *2.

Here, the ALJ provided substantial support for his finding. He found that Plaintiff "goes grocery shopping, utilizes public transportation, visits her sister, and attends her scheduled

12

appointments." (R. at 15.) Further, he cited to the fact that during examinations performed from November 2015 to December 2015, Plaintiff "established good rapport and demonstrated cooperative behavior, normal speech, normal impulse control, and no homicidal ideation." (R. at 15.) Based on this evidence and an independent review of the record, the Court is persuaded that substantial evidence supports the ALJ's determination that Plaintiff only has moderate limitation in maintaining social functioning.

### 3. Maintaining Concentration, Persistence, or Pace

Finally, Plaintiff objects to the Magistrate Judge's finding that the ALJ's mischaracterization of her testimony in determining her limitation in maintaining concentration, persistence, or pace was merely harmless error. (Doc. No. 16 at 3-4.) The Court, however, agrees with the Magistrate Judge's reasoning.

At the hearing, Plaintiff testified that she could not focus long enough to watch a one-hour television program and that she could not finish crocheting blankets. (R. at 59, 68.) But in the ALJ's decision, he wrote that Plaintiff "indicated that she . . . watches television, and does arts and crafts projects including crocheting." (R. at 16.) He relied on this representation to find that Plaintiff only has moderate limitation maintaining concentration, persistence, or pace. (R. at 16.)

The mischaracterization of a claimant's testimony is impermissible. Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008). Here, though, the Magistrate Judge found that the mischaracterization was harmless error and not a ground for reversal. (Doc. No. 15 at 10.) Specifically, the Magistrate Judge found:

> Finally, the ALJ's explanation of his finding that Plaintiff has moderate limitation in concentration, persistence or pace may be deficient, but, even if it is, the error is harmless, because Plaintiff has not shown reversible error with respect to one of the other two areas of functioning. See Rutherford, 399 F.3d at 553, 556

(explaining that remand is not required where the ALJ's error does not affect the outcome of the case). As Plaintiff notes, the ALJ incorrectly characterized her testimony about watching television and crocheting. In particular, although the ALJ stated that Plaintiff "indicated" that she could watch television and crochet, R. 15, she actually testified that she could not concentrate long enough to watch a one hour television program, R. 67, and had not completed four blankets that she had commenced two years ago. R. 58. The ALJ may not mischaracterize evidence in the record. See Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008). Nevertheless, any error with respect to this area of functioning is harmless, because the ALJ's findings in the other two areas can be sustained. Plaintiff must show marked limitation in two areas of functioning, not just one. *See* 20 C.F.R. Part 404, Subpart P, Appendix1, § 12.04(B), 12.06(B), 12.08(B) (2015). Hence, to obtain a remand, she would have to demonstrate legal error with respect to two areas, not just one.

(Doc. No. 15 at 10) (emphasis added.)

As articulated by the Magistrate Judge, the ALJ's mischaracterization of Plaintiff's testimony does not alter his determination that Plaintiff does not meet or medically equal a listed impairment at step three of the five-step evaluation. In order to satisfy Paragraph B, Plaintiff needed to establish marked limitation in two areas of functioning, not just one. See 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04(B), 12.06(B), 12.08(B) (2015). Because substantial evidence supports the ALJ's findings as to activities of daily living and maintaining social functioning, the ALJ's mischaracterization of Plaintiff's testimony regarding maintaining concentration, persistence, or pace does not alter the outcome of her case. Thus, it is harmless error.

Plaintiff also argues that the ALJ's mischaracterization negatively affected the ALJ's RFC assessment. (Doc. No. 16 at 3-4.) Specifically, she contends that the mischaracterization led the ALJ to direct an inadequate hypothetical question to the vocational expert at the hearing. (Id.) This argument is untenable.

An ALJ's hypothetical question to a vocational expert must accurately reflect all of a claimant's impairments that are supported by the record. Holloman v. Comm'r of Soc. Sec., 639

Fed. App'x. 810, 815 (3d Cir. 2016). If the question does not reflect all of a claimant's impairments, it is deficient and the expert's answer to it cannot be considered substantial evidence. Remand is not required if the error would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

Here, Plaintiff contends that the ALJ's mischaracterization of her testimony led him to pose an inadequate hypothetical question to the vocational expert. (Doc. No. 16 at 3-4.) She argues that the hypothetical question did not adequately convey the fact that she has marked limitation maintaining concentration, persistence or pace. (Id. at 4.) Having reviewed the hypothetical question posed to the vocational expert, the Court disagrees.

At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

> Assume an individual of the age, education, and work experience of [Plaintiff] who would be limited to light work activity, but this person would be limited to occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs, but no climbing ladders, rope, or scaffold. No exposure - - no frequent exposure to fumes, odors, dusts, gases, environments with poor ventilation, hot and cold temperatures, dampness and humidity. This individual is limited to occupations which do not require exposure to dangerous machinery or unprotected heights. Due to some falls this individual would be limited to occupations which allow brief unscheduled access to a restroom during the work day. This individual is limited to simple, routine tasks, not performed in a fast pace production environment, involving only simple work-related decisions and in general relatively few work place changes with a specific vocational preparation of one or two. This individual must work primarily with objects rather than people. No jobs requiring team work or interaction with the public. Would there be light jobs such an individual could perform?

(R. at 69-70) (emphasis added.)

Contrary to Plaintiff's argument, the ALJ's hypothetical question adequately reflected her testimony. Although he mischaracterized her testimony in his written decision, he appropriately included a limitation regarding pace in his hypothetical question posed to the vocational expert at

15

the hearing. He stated, "[t]his individual is limited to simple, routine tasks, not performed in a fast pace production environment, involving only simple work-related decisions and in general relatively few work place changes with a specific vocational preparation of one or two." (R. at 69-70.) Thus, in no way did the ALJ's mischaracterization of Plaintiff's testimony affect his questioning of the vocational expert. Thus, the Court is unpersuaded by Plaintiff's argument and will overrule her first Objection.

## B. The Magistrate Judge Correctly Found that Substantial Evidence Supports the ALJ's Credibility Determination

In her second Objection, Plaintiff argues that the Magistrate Judge erred by finding that substantial evidence supports the ALJ's determination that Plaintiff's testimony and Floyd Scholten's testimony were not credible. (Doc. No. 16 at 5.) This argument lacks merit.

### 1. Plaintiff's Testimony

In the R&R, the Magistrate Judge found that substantial evidence supported the ALJ's credibility determination. (Doc. No. 15 at 11-12.) To support that finding, the Magistrate Judge cited to (1) evidence that medication greatly improved Plaintiffs'

symptoms, (2) the ALJ's consideration of Plaintiff's Global Assessment of Functioning ("GAF") score of 51-60,[1] and (3) the opinions of state agency psychological consultants. (Id.) Plaintiff contends that this evidence does not support the ALJ's finding that her testimony was not credible. (Doc. No. 16 at 5.) The Court disagrees.

First, Plaintiff argues that evidence that her condition improved with medication should not have been used to discredit her testimony. (Id.) She contends that the ALJ erroneously used this evidence to find that a stable or improving condition shows a lack of a disability. (Id.) This argument, however, misconstrues the ALJ's logic. The ALJ did not write that the mere fact that Plaintiff's condition improved discredited her testimony. Rather, he made the credibility determination because the objective medical findings in the record that her condition had improved contradicted her testimony that her disability was still severe.

Second, Plaintiff takes issue with the ALJ's reliance on her GAF scores of 51-60, which indicates moderate symptoms, because she also had GAF scores of 49-50, which indicates marked symptoms. (Doc. No. 16 at 5.) In his decision, the ALJ explained that he afforded more weight to the GAF score of 51-60 because that score was better supported by the objective medical record. (R. at 21.) Additionally, the ALJ found that the GAF scores of 51-60 were "more consistent with the record as a whole including the claimant's activities of daily living in which she reported that she prepares meals, performs household chores, drives, utilizes public transportation, goes grocery shopping, visits her sister, and attends her scheduled appointments. (R. at 21) (internal citations omitted.) Plaintiff argues that the ALJ's decision to afford greater

---

[1]  GAF refers to Global Assessment of Functioning, which is "the clinician's judgment of the individual's overall level of functioning." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, TEXT REVISION at 32 (4th ed. 2000) ("DSM-IV-TR"). A GAF score in the range of 51-60 means, "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks); OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34.

weight to the GAF scores of 51-60 constitutes impermissible "lay medical judgment." (Doc. No. 16 at 5.)

As the factfinder, the ALJ is specifically charged with the duty to evaluate all medical evidence in a disability insurance benefits case. See 20 C.F.R. §§ 416.945, 416.946(c). The ALJ—not treating or examining physicians or consultants—makes the ultimate determination as to whether a claimant is in fact disabled. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). The ALJ must evaluate the GAF score in context of the medical record and evaluate the score appropriately. Id.

Here, the ALJ afforded more weight to the GAF scores of 51-60 because they were better supported by the objective findings in the record. To support this determination, the ALJ pointed to the evidence that supported his finding that Plaintiff does not meet or medically equal a listed impairment under the Social Security Administration regulations. (R. at 21.) As explained above, the Magistrate Judge need only determine whether the ALJ's determination was supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Based on the evidence cited by the ALJ and having conducted an independent review of the record, the Court agrees with the Magistrate Judge's determination that substantial evidence supports the ALJ's decision to afford greater weight to the GAF score of 51-60. This Court is not permitted to re-weigh the evidence in the record or make its own factual determinations. See Chandler, 667 F.3d at 358.)

Finally, Plaintiff challenges the ALJ's reliance on the opinions of state agency psychological consultants in his determination that her testimony was not credible. (Doc. No 16 at 5.) This challenge lacks merit. The Social Security Administration regulations expressly permit an ALJ to rely on the opinion of a state agency medical consultant, who is a "highly qualified...expert[] in Social Security disability evaluation. 20 C.F.R. § 416.927(e)(2)(i).

Further, the Third Circuit requires that an ALJ consider any existing state consultant reports. Chandler, 667 F.3d at 362. Thus, the ALJ's use of the opinions of state agency psychological consultants was proper.

Additionally, in finding that Plaintiff's testimony was not credible, the ALJ found that Plaintiff's testimony was at odds with objective findings in the record. For example, despite Plaintiff's repeated claims that she is severely mentally ill, medical reports show that she appeared cooperative at her medical examinations and exhibited normal speech, cognition, and judgment. (R. at 18-21.) Further, her testimony contradicted medical reports that her symptoms improved with medication and treatment. (R. at 19.) Although Plaintiff told the ALJ that she can only focus for moments at a time, she stated at a January 2014 medical examination that she merely had "mildly impaired attention and concentration." (R. at 19.) Additionally, Plaintiff testified that she has urinary incontinence, but the record is completely void of any evidence that she takes medicine or wears protective clothing to address this issue. (R. at 20.) Thus, after hearing from Plaintiff, the ALJ compared her testimony to her treatment history, examination findings, and medical opinions from state agency physicians, and found that the objective findings in the record sharply contradicted Plaintiff's testimony.

### 2. Plaintiff's Ex-Husband, Floyd Scholten

Plaintiff also challenges the Magistrate Judge's determination that substantial evidence supports the ALJ's finding that the testimony of Floyd Scholten, Plaintiff's ex-husband, was not credible. (Doc. No 16 at 6.) Specifically, Plaintiff argues that the Magistrate Judge's explanation for her determination—that Scholten's testimony contradicted the record—was insufficient. (Id.) The Court is not persuaded by Plaintiff's argument.

Here, the ALJ explicitly considered Scholten's testimony, but decided that it contradicted the objective findings in the record. Specifically, the ALJ found:

> The claimant's husband indicated that the claimant suffers anxiety, panic attacks, depression, focus problems, mood swings, anger outbursts, oppositional defiant disorder, and crying spells. He also reported that the claimant has problems remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others. He noted that the claimant could walk about twenty minutes before she would need to stop and rest and she could pay attention for about fifteen minutes. This evidence is given limited weight because the claimant's husband is not an acceptable medical source. Additionally, this evidence is inconsistent with the record as a whole including the claimant's relatively normal range of activities of daily living as discussed above.

(R. at 21) (emphasis added.)

Plaintiff argues that the ALJ did not sufficiently explain why he found that Scholten's testimony was inconsistent with the record. (Doc. No 16 at 6.) But the ALJ's decision must be read as a whole. While the ALJ did not explicitly list the ways in which Scholten's testimony was inconsistent with the record in the paragraph quoted above, the decision lists numerous examples of contradictions. For one, Scholten claims that Plaintiff suffers from several, debilitating mental disorders, but medical reports indicate that she appeared cooperative at medical examinations and exhibited normal speech, cognition, and judgment. (R. at 18-21.) Although Scholten testified that Plaintiff can only focus for moments at a time, Plaintiff stated in a January 2014 medical examination that she merely had "mildly impaired attention and concentration." (R. at 19.) He further reported that Plaintiff could only walk about twenty minutes before she would need to stop and rest, but 2015 medical tests revealed that Plaintiff enjoys full range of motion and function in her hips, knees, and ankles. (R. at 20.)

Reading the ALJ's decision as a whole, it is clear that Scholten's testimony contradicted objective medical findings in the record. Thus, the Court is persuaded that substantial evidence

supports the determination that his testimony is not credible. Accordingly, the Court will overrule Plaintiff's second Objection.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the R&R (Doc. No. 16) are overruled. The Report and Recommendation (Doc. No. 15) will be approved and adopted in its entirety. An appropriate Order follows.

